Filed 1/24/23  In re S.G. CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

### IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### FOURTH APPELLATE DISTRICT

### DIVISION THREE

| | |
|---|---|
| In re S.G., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE, Plaintiff and Respondent, v. S.G., Defendant and Appellant. | G061156 (Super. Ct. No. 20DL1025) O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Lewis W. Clapp, and Pamela P. King (S.B. Super. Ct.), Judges.  Reversed.

Marilee Marshall, under appointment by the Court of Appeal, for Defendant and Appellant S.G.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Arlene A. Sevidal, Lynne G. McGinnis and Minh U. Le, Deputy Attorneys General, for Plaintiff and Respondent.

S.G. appeals from the juvenile court's finding that he committed attempted murder. He contends that because the court could have found him liable under the natural and probable consequences doctrine, which is no longer a legally valid theory of liability for attempted murder liability to make its finding, the finding must be reversed. The People argue the error here was harmless beyond a reasonable doubt because "overwhelming evidence" showed appellant was the shooter. We disagree and reverse the true finding on the attempted murder count.

FACTUAL AND PROCEDURAL HISTORY

A. *The Shooting of A.C.*

On October 8, 2020, at around 3 a.m., A.C. was sitting in the driver's seat of his parked car, watching a video on his cell phone when three young men approached. Two of them approached on the driver's side, and the third approached on the passenger side. The first person who approached on the driver's side had buzzed hair, and wore a white short sleeve T-shirt and gray shorts. The second person on the driver's side was wearing a black hat or baseball cap with a cursive "A" on it, a white short sleeve T-shirt, gray shorts, and white socks that came up to his shins. The last person approached on the passenger side, and wore a blue long sleeve T-shirt, black shorts, socks, and a hat. A.C. identified this third person as appellant.

The male with the buzzed hair asked A.C. a question, but because A.C. could not hear him, he started his car to roll down the window. The car malfunctioned and the car doors unlocked. The man with the buzzed hair pulled A.C. out of the car and then punched him. A.C. observed that he and his companion were armed with black pistols, which looked like something "between a Glock [.]40 and a [.]45 with an extended mag[azine]." They both pointed their guns at A.C. Meanwhile, the man in blue, who was on the passenger side, ran around the car and jumped into the driver's seat.

2

The two men who were standing outside asked A.C. for his belongings, and A.C. replied that they were all in the car. When they tried to punch A.C. again, he dodged and used a pocket knife to stab one of them. A.C. then turned and ran, but was shot twice. After a bullet pierced his abdomen, he fell to the ground and "played dead." The other bullet struck his left arm. A.C. did not see who shot him. He heard someone say, "We need to go now," before observing the men getting into his car and leaving the scene. After they left, A.C. pulled out his cell phone, which he had hidden in his underwear, and dialed 911. Subsequently, he was transported to a local hospital for treatment.

B. *The Shooting of a Police Officer*

Several hours after A.C.'s shooting, officers responded to a parking lot where A.C.'s stolen car had been located. One of the responding officers conducted a search of the nearby area for possible suspects. She noticed three males who matched the description of the suspects walking towards the stolen car. As she started to radio in the information, she heard three gunshots and ducked. Based on the officer's body-worn camera footage, the adult male who fired the gunshots at her was wearing a blue shirt and was later identified as Richard Baez. Appellant, who was wearing a white T-shirt, was standing next to Baez.

After shooting the officer, the three men then ran away. All three men were later apprehended by the police. Baez was found with a nearby .380-caliber handgun. Appellant, who was wearing a baseball cap and had a cast on his hand, was found near a Glock .23 handgun with an extended magazine that was loaded with .40-caliber bullets. The third male was later identified as M.B., a minor. He was wearing a long sleeve black T-shirt over a bloody white T-shirt and had a puncture wound on his middle upper back.

C. *A.C.'s Pretrial Identification*

Later that afternoon, when A.C. woke up after surgery, an officer asked him to look at three photo lineups because it was unclear whether A.C. "was going to live or

3

die." The three photo lineups each had a different suspect and five unrelated persons. When shown the lineup containing Baez, A.C., who appeared groggy and repeatedly blinked, identified Baez as the man wearing a blue shirt. He identified an unrelated person as the person who had shot him. When shown the lineup containing M.B., A.C. identified another unrelated man as being involved. When shown the lineup containing appellant, A.C. could not identify anyone. A.C. told the officer the two individuals wearing white T-shirts had guns and punched him, and he did not remember any of his attackers having a cast on their hands.

D. *Physical Evidence of Firearm Use*

Several .38-caliber cartridge casings were found by the officer's patrol car. Two .40-caliber cartridge casings were found where A.C.'s car had been parked. The casings could not have been fired from a .380 pistol found with Baez because the .40-caliber bullets would not have fit in the pistol's barrel. A "BB" gun, which could never fire a .40-caliber bullet, was found inside A.C.'s car.

Testing for gunshot residue indicated appellant had one particle of gunshot residue on his right hand and none on his left hand. No gunshot residue was found on M.B.'s or Baez's hands. One or more gunshot residue particles indicate that the individual fired a firearm, was standing zero to 10 feet from a discharging firearm, handled a firearm or ammunition, or contacted a surface with gunshot residue on it.

E. *Wardship Petition, Trial and Adjudication*

On October 9, 2020, the San Bernardino County District Attorney filed a juvenile wardship petition under Welfare and Institutions Code section 602, subdivision (a), alleging attempted murder of a police office (Pen. Code, §§ 187, subd. (a), 664; count 1), attempted murder of A.C.; count 2, carjacking while using a firearm (Pen. Code, § 215, subd. (a); count 3), second degree robbery (Pen. Code, § 211; count 4), assault with a firearm (Pen. Code, § 245, subd., (a)(2), count 5; and possession of a firearm by a

4

minor (Pen. Code, § 29610; count 6). The petition further alleged appellant personally used a firearm as to counts 1, 3, and 4.

At trial, the prosecutor argued appellant was guilty of the attempted murder of A.C. because: (1) appellant was the shooter, and (2) "attempted murder was the natural and probable consequence" of the target crime of carjacking. Defense counsel noted that at trial, A.C. had identified appellant as the person in the blue shirt, who was not involved in the shooting. Defense counsel conceded a Glock handgun was found near where appellant was arrested, and thus appellant could be found guilty of possession of a firearm by a minor. However, counsel argued there was no evidence that Glock was the one that fired the shots at A.C. Even if it was, the gun could have been passed to appellant to hold. Counsel also argued the gunshot residue had little probative value because among other reasons, appellant was within 10 feet of Baez when Baez shot at the officer.

On November 24, 2020, the juvenile court found true counts 2 through 6 and the firearm use allegations attached to counts 3 and 4. The court found not true count 1 (attempted murder of police officer). On February 3, 2022, the court declared appellant a ward of the court, and committed him to juvenile hall for 1,579 days with 484 days of credit for time served.

DISCUSSION

Appellant argues that pursuant to Senate Bill Nos. 1437 (2017-2018 Reg. Sess.) and 775 (2021-2022 Reg. Sess.), the natural and probable consequences doctrine is no longer a legally valid theory of attempted murder. Appellant further argues that he is entitled to the benefits of those Senate Bills because his case is not yet final. Finally, because the prosecutor relied on a legally invalid theory, "[t]he reviewing court must reverse the conviction unless, after examining the entire cause, including the evidence, and considering all relevant circumstances, it determines the error was harmless beyond a

5

reasonable doubt." (*People v. Aledamat* (2019) 8 Cal.5th 1, 13 ["alternative-theory error is subject to the more general *Chapman* [*v. California* (1967) 386 U.S. 18, 24] harmless error test"].) Respondent does not dispute any of the above. Rather, respondent argues the error was harmless beyond a reasonable doubt because there was overwhelming evidence appellant shot A.C.

Respondent argues the evidence showed appellant shot A.C. because: (1) when shown a photo lineup at the hospital, A.C. identified Baez as the male who was wearing the blue shirt that was not involved in the shooting; (2) appellant was wearing a baseball hat and white T-shirt when he was arrested, consistent with A.C.'s description of one of the armed attackers; (3) appellant was arrested near a Glock handgun, which is the handgun consistent with the bullet casings found near where A.C.'s car was parked when the shooting occurred; and (4) appellant had one particle of gunshot residue on his hand, which suggests he fired a handgun. Although the above evidence is probative, it is not overwhelming evidence that appellant was the shooter.

At the outset, we note the prosecutor did not allege appellant personally used a firearm to commit the attempted murder of A.C., and the juvenile court never made a finding that appellant was the actual shooter or that appellant used a firearm to commit the attempted murder. Although A.C. identified Baez as the male in the blue shirt when he was shown the photo lineup after his surgery, A.C. identified appellant as the male in the blue shirt at trial. While his identification of Baez was closer in time to the shooting, it is undisputed that A.C. was groggy and had not recovered from his surgery when he made that identification. Additionally, during that same identification, A.C. incorrectly identified an unrelated person as the shooter. Thus A.C.'s identification of Baez does not have great probative value.

Similarly, the fact that appellant fit the description of one of the armed attackers does not have great probative value on the question of whether appellant was the shooter. As noted, at trial, A.C. had identified appellant was the person wearing a

6

blue shirt who was inside the car when the shooting occurred. Additionally, appellant could have changed his shirt after the shooting of A.C. A.C. never mentioned that any of his attackers had a cast on their hand, even though he observed the armed attackers were wielding handguns that looked like Glocks with extended magazines. Finally, even if appellant was one of the armed attackers, A.C. never saw who fired the shots. It could have been the person A.C. had stabbed, which likely was M.B.

The fact that appellant was arrested near a Glock is probative, but as defense counsel argued, appellant could have been holding the Glock for the actual shooter. Additionally, A.C. had testified there were two Glocks and there was no evidence the Glock recovered near appellant was the Glock actually used to fire the two bullets at A.C.

Finally, the fact that appellant had one particle of gunshot residue on his hand does not have great probative value. We note that Baez, who shot multiple times at a police officer, did not have any gunshot residue on his hands. As defense counsel noted, the gunshot residue on appellant could have been the result of his proximity to Baez when Baez shot at the officer. In sum, the evidence does not show there was overwhelming evidence appellant was the shooter. On this record, we cannot find beyond a reasonable doubt that the juvenile court made its true finding that appellant was guilty of attempted murder of A.C. based on the theory that appellant was the actual shooter. Accordingly, we must reverse.

DISPOSITION

The juvenile court's true finding on the attempted murder count is reversed.


DELANEY, J.

WE CONCUR:


MOORE, ACTING P. J.


GOETHALS, J.